### UNITED STATES v. PARKER.
#### No. 3413.

United States District Court
M. D. North Carolina.
July 18, 1950.
Order Affirmed Oct. 10, 1950.

W. A. Hall, Jr., Richmond, Va., for defendant.

Bryce R. Holt, Greensboro, N. C., for plaintiff.

HAYES, District Judge.

The court has made separate Findings of Fact and Conclusions of Law which appear of record on the motion of the defendant to set aside the judgment and verdict of guilt on the grounds that some evidence was admitted against the defendant while he was absent from the court.

The defendant was indicted and convicted for fraudulently attempting to evade a large part of his income and victory taxes for the years 1943, 1944 and 1945 in the amounts of $14,647.13, $122,497.89, and $24,788.00 respectively. He pleaded not guilty and at the trial was represented by Messrs. Joseph G. Dawson of Kinston, N. C., Armistead Sapp, Beverly Moore and William Poteat of Greensboro, N. C. These persons are known to the court to be men of the highest character, learned in the law, and with the exception of Mr. Poteat, had an extended experience in trial work. The defendant was ably and capably represented by counsel throughout the long trial. The trial started on the 12th day of September 1949 and proceeded continuously from day to day until October 7 at which time it ad-

journed at 3:30 P.M. on motion of counsel for defendant due to a cold on the part of Mr. Sapp and with the assurance at the time that all of the evidence would be concluded on Monday October 10th. Mr. Sapp was not able to be present on October 10th but the other three attorneys were present and at their request the court permitted them to offer the witnesses they had and then recessed the court until October 12th with the assurance that all of the evidence would be produced within one half day. The court was adjourned at 10:45 A.M. on October 10 until Wednesday October 12th at 9:30 A.M. for the purpose of concluding the taking of the testimony.

On October 12th the court convened at 9:30 A.M. but Mr. Sapp was still not able to be present in court. The defendant was not present but his counsel assured the court that he would arrive any minute and consented to proceed with the taking of the evidence in his absence. The defendant was out on bond. The defendant offered certain testimony and the United States offered certain rebuttal testimony. The taking of the evidence was completed at 11:30 A.M. at which time on motion of the defendant a further adjournment was taken until Oct. 25th in order that Mr. Sapp could be present to participate in the argument to the jury. During the discussion for the period of this adjournment, counsel for defendant received word that the defendant had been in an automobile accident on his way to the court and was then in the hospital in Asheboro, N. C. The defendant was present in court with all of his attorneys when it convened on Oct. 25th. The defendant had a daily transcript of the testimony taken throughout the trial and he received and read a transcript of the testimony taken on October 12th and discussed the same with his counsel on the morning of October 25th. He contended with his counsel that a former agent of the United States, McBrayer, had given incorrect testimony concerning the existence of four compartments in a vault in the defendant's basement, which the defendant claimed he could disprove, but after full discussion between him and his counsel concerning the testimony and upon advice from counsel that the testimony

offered on October 12th was not important and that if he resumed the stand to deny it that the dangers from cross-examination outweighed any advantages that he might gain by going back to the witness stand, he acquiesced in the decision of his counsel and offered no testimony, nor did he request the privilege of offering any testimony in response to the evidence taken on October 12th, nor did he ask that these witnesses be recalled for further cross-examination.

The defendant through his counsel submitted 16 pages of requests for instructions to the jury but no error was assigned for the taking of testimony in the absence of the defendant on October 12th. The entire day was consumed in arguments to the jury.

The court instructed the jury on October 26th and a verdict of guilty against the defendant on all counts charged in the bill of indictment was returned that day. The defendant filed a motion for judgment of acquittal after verdict or for a new trial in which nine separate grounds were assigned but no mention was made of the taking of the testimony in the absence of the defendant on October 12th. The imposition of sentence was postponed until the 19th day of December to afford time for the defendant's accountant along with agents of the Internal Revenue to compute and determine the taxes which the defendant owed after allowing him deductions for the carry-back provisions for losses sustained in the years subsequent to 1945 and in order to afford the defendant the opportunity to pay the tax which the court would take into consideration in the imposition of sentence.

The defendant's counsel appeared before the court on the 13th day of December and informed the court that the negotiations had not been completed and the matter was continued until January 6, 1950. On that day the defendant and all counsel appeared in court at which time the counsel announced to the court that the defendant would not perfect an appeal and would not be able to pay the tax, whereupon, the court imposed a sentence on each count in the bill of indictment. At this time the defendant personally asked the court to permit him to begin his sentence a few days later in order

that he might prepare his Social Security and tax returns and it would be necessary for him to have his books in order to do this and accordingly the execution of his sentence was stayed until January 13th and again until January 18th at which time he went into custody.

At no time throughout all of these hearings did the defendant or his counsel intimate to the court that he was aggrieved or prejudiced in any degree by the taking of evidence on October 12, 1949 in his absence nor was the matter brought to the attention of the court until he filed his motion on April 12, 1950 to vacate the sentences and set aside the judgment of conviction and to discharge the defendant or order a new trial.

The defendant had attended at least one college and the University of North Carolina and is a man of considerable business experience.

On the motion to vacate the defendant testified that he left his home in Eagle Springs about 7:30 A.M. on the morning of October 12th in his Cadillac car for the purpose of attending court in Greensboro at 9:30 A.M., and that when he got between Randleman and Greensboro, about 15 miles from Greensboro, he was crowded off of the road by a truck traveling in the same direction. He offered no corroborative evidence as to the time he left home nor as to the manner in which he received his injury. He knew that he had to go through the towns of Candor, Seagrove, Asheboro, Randleman and a large part of the business section of Greensboro before he could arrive at the courthouse. The highway patrolman who investigated the scene of the accident testified that the pavement at the point of the accident was 21 feet with a gravel shoulder 17 feet wide along the east side of the pavement which was used for a side stop along the highway and that the highway was only slightly up-grade at that point, and that the defendant's car not only had to leave the pavement but had to travel across the 17 feet of gravel road before his car struck trees standing on the east side of the gravel shoulder. The court was not satisfied that the absence of the defendant on October 12th was excusable or through no fault of his own. He had voluntarily absented himself from the courtroom and the corporate limits of Greensboro with the knowledge that his trial was to be resumed at 9:30 A.M. on October 12th.

The witnesses who testified on October 12th were carefully cross-examined by the defendant's counsel and testimony given by the witnesses did not, in the opinion of the court, affect the result. The defendant had been a witness in his own behalf and was compelled to admit, and did admit, that he received thousands of dollars in checks from his customers which, instead of putting in the bank, he endorsed and delivered in payment of single premium life insurance policies. These transactions occurred on various dates and consisted of numerous checks and amounted to several thousand dollars. He admitted that he failed to enter them on his cash journal showing the receipt of the payment and that they were not included in his tax returns. The documentary evidence was overwhelming.

The testimony taken in the absence of the defendant was of such a nature that the counsel for the defendant did not think it would have a substantial effect on the verdict.

■ The right of a defendant to be present throughout his trial is unquestioned but where he is not in custody he can waive his presence after the trial begins. His right to be present during the taking of testimony is no greater than his right to be tried by a jury of 12. Eury v. Huff, 4 Cir., 141 F.2d 554, 555. In the above case the defendant was represented by an attorney who agreed to waive the constitutional requirement of a jury of 12 and proceed with a jury of 10. The court said: "We agree with the court below that there was a valid waiver of the constitutional right to trial by a common law jury of twelve and that the sentence of the court based upon the verdict was not subject to attack. * * * The contention that the waiver made by petitioner's counsel is not binding because petitioner himself did not understand the nature of the right waived is manifestly unsound." In like manner the question of the

right to a public trial was presented in the case of U. S. v. Sorrentino, 3 Cir., 175 F.2d 721, at page 723, Circuit Judge Maris said for the court: "The defendant Sorrentino now strongly urges, however, that the waiver was by his counsel alone and that since he himself did not join in it the waiver did not validly bind him. We see no merit in this contention. We have already pointed out that this defendant was represented by three experienced lawyers of his own choice. There is no suggestion by him that they did not competently represent him and the record shows that they were assiduous in defending his interests throughout the trial. By virtue of their employment by him the control of the conduct of his defense was confided in them and they were authorized to speak for him in matters such as this which might arise during the course of the trial. Moreover Sorrentino did not at any time indicate to the court that he was not fully satisfied with the action which the trial judge had thus taken with his counsel's consent. It must, therefore, be concluded that he acquiesced in his counsel's judgment that his interests would not be prejudiced and indeed might be served by the reduction which the court ordered in the number of spectators at the trial. We conclude that defendant Sorrentino validly waived his right to a public trial and, therefore, may not now object that it was denied to him."

The right to be present at all times throughout the trial is one that can be waived. Diaz v. U. S., 223 U.S. 442, 32 S. Ct. 250, 254, 56 L.Ed. 500, Ann.Cas.1913C, 1138. In this case the defendant contended that he could not waive his right nor consent that the trial proceed in his absence while testimony was taken and in support of his contention relied on Thompson v. Utah, 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 and Hopt v. Utah, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262. In this case the court said: "Where the offense is not capital and the accused is not in custody, the prevailing rule has been, that if, after the trial has begun in his presence, he voluntarily absents himself, this does not nullify what has been done or prevent the completion of the trial, but, on the contrary, operates as a waiver of his right to be present, and leaves the court free to proceed with the trial in like manner and with like effect as if he were present." This circuit has decided the matter also. Grove v. U. S., 4 Cir., 3 F.2d 965. See also U. S. v. Vassalo, D.C., 52 F.2d 699 and Kemp v. Government of Canal Zone, 5 Cir., 167 F.2d 938.

■ In noncapital cases defendants are entitled to bail and it is not customary to put them in custody even after the trial begins. To do so might seriously prejudice the defendant before the jurors. However, this does not give the defendant the unqualified right to leave the place where the court is being held and nullify the proceedings if he goes beyond the reach of the court or for some other cause doesn't return. An examination of the cases granting a new trial on account of the absence of the defendant discloses, so far as I can find, that relief has been granted in those cases where his absence was involuntary through imprisonment. It would seem that when he is in court at the time of its recess and he departs from the place of the court and fails to return that his absence is voluntary in a legal sense. It would be utterly impractical for the court to hold up jurors and litigants to await the pleasure of a defendant to come into court. When he leaves the courtroom he goes at his peril; and if he is not present when it reconvenes, it is incumbent upon him to make known to the court any excuse he has for his failure to be present; and if he has any complaint to make concerning what occurred in his absence he shall make it known to the trial court in order that appropriate steps may be taken by the court to avoid any prejudice to the defendant and to proceed in an orderly manner to the completion of the trial. The subject is fully discussed in U. S. v. Noble, D.C., 294 F. 689 and is affirmed in 9 Cir., 300 F. 689. It would be a travesty upon justice for a defendant with full knowledge of all of the facts that occurred during his absence and after being advised by counsel that it would not be wise to take the stand again to deny such testimony, to permit him to speculate on the verdict of the jury and after a verdict of guilty allow him to take advantage of his absence.

If it be conceded that he was not present to confer the express right upon his counsel to waive his presence on October 12th, he was present with his counsel on October 25th and acquiesced in their advice to let the case go on to the jury without testifying. If it be conceded that the court was helpless to proceed on the morning of October 12th until it sent out messengers to locate the accused and find out why he wasn't present and if that constituted an error, the defendant and his counsel on October 25th had full knowledge of it and failed to call it to the attention of the court. In the case of Frank v. Mangum, 237 U.S. 309, at page 338, 35 S.Ct. 582, 59 L.Ed. 969, the court considered the effect of Frank being in custody and not present in the courtroom when the verdict was rendered against him although his presence had been waived by his counsel but without his knowledge or consent. The court sustained the conviction, holding that the defendant had waived his right to be present. The defendant through his counsel filed a motion for a new trial based on 103 different grounds without specifying the absence of the defendant at the time of the rendition of the verdict and the fact that he did not include this as one of the grounds for a new trial was regarded as a waiver.

Accordingly the motion to vacate the judgment is denied.