UNITED STATES, Appellee,

v.

Specialist Gregory V. STEWART, 434–51–8823, United States Army, Appellant.

ACMR 9200175.

U.S. Army Court of Military Review.

22 April 1993.

**524**

For Appellant: Captain Lawrence W. Andrea, JAGC (argued); Major Robin L. Hall, JAGC (on brief).

For Appellee: Captain Glenn L. Kirschner, JAGC (argued); Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Joseph A. Russelburg, JAGC, Major Timothy W. Lucas, JAGC (on brief).

Before CREAN, DOGGETT and DELL'ORTO, Appellate Military Judges.

## OPINION OF THE COURT

CREAN, Senior Judge:

The appellant, contrary to his pleas, was found guilty by a general court-martial composed of officer members, of conspiracy to distribute "crack" cocaine, five specifications of distribution of "crack" cocaine, one specification of possession of cocaine, and escape from custody, in violation of Articles 81, 112a, and 95, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 912a, and 895 (1982 and Supp. V 1987) [hereinafter UCMJ]. The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for twenty-six years, forfeiture of all pay and allowances, and reduction to Private E1.

The appellant was tried in absentia. He now asserts the following three errors: It was error for the military judge to permit his trial in absentia; the findings of guilty of escape from custody cannot stand because the evidence is not legally and factually sufficient; the military judge erred in not instructing on the defense of mistake of fact and not correctly instructing on the elements of the offense; and, the sentence to confinement for twenty-six years is inappropriately severe.

On 2 August 1991, the appellant sold "crack" cocaine to Criminal Investigation Command (CID) undercover agent Hamlette in his off-post apartment. On 3 August 1991, he again sold "crack" cocaine in his apartment to Agent Hamlette. He sold "crack" cocaine to a fellow soldier, Private (PVT) Blair, on 26 August 1991. The next day, PVT Blair tested positive for cocaine on a unit urinalysis test. On 30 August 1991, the appellant again sold "crack" cocaine to PVT Blair. Later that same day, the appellant was contacted by another CID undercover agent, Middleton, about the purchase of cocaine. The appellant met PVT Blair and learned that PVT Blair still had cocaine left from the sale earlier that day. The appellant and PVT Blair agreed to sell part of the cocaine to Middleton. The appellant and PVT Blair met Middleton at a local car wash and the appellant sold Middleton "crack" cocaine. The appellant was immediately apprehended by the CID and Killeen police.

After the appellant was apprehended, he immediately agreed to turn in his supplier, Caldwell. He made arrangements with Caldwell to buy cocaine. The appellant was put in a car by the CID and local police with Middleton to meet Caldwell. The ap-

pellant did not know that Middleton was a CID agent. In fact, Middleton testified that, in order to maintain his undercover status, he purposely told the appellant that he was not a CID agent, but rather a soldier who had gotten caught with drugs and he was helping the CID in hopes of leniency. The appellant and Middleton met Caldwell and Middleton purchased cocaine. As Middleton and the appellant drove off from the buy, the CID and Killeen police moved in and apprehended Caldwell. Seeing this action, the appellant jumped out of the car as Middleton was slowing down to return to the scene of the purchase and ran off. He was later apprehended by the CID.

The appellant was arraigned on the charges and specifications on 26 November 1991. No pleas were entered and no motions were made, but a trial date of 18 December 1991 was established. The military judge did not advise the appellant that, if he failed to appear for his trial on 18 December 1991, he could still be tried in his absence. The trial was subsequently moved to 17 December 1991. The appellant was advised of this date change by his supervisor, Sergeant First Class (SFC) Primer. On the afternoon of 16 December 1991, SFC Primer discussed the trial again with the appellant and advised him that Staff Sergeant (SSG) Rodriguez would meet him in the morning to escort him to the trial.

On the date of trial, 17 December 1991, SSG Rodriguez went to the appellant's room to escort him to the trial. The appellant did not answer to his knock so SSG Rodriguez obtained a key to appellant's barracks room. The appellant was not in his room. Staff Sergeant Rodriguez did not search the room but merely walked through it. The appellant's first sergeant had someone look through the barracks for the appellant but did not order any further search of the appellant's off-post apartment. The trial defense office was also checked to see if the appellant had gone there.

The military judge was informed of the appellant's absence and, based on the above facts, determined that the appellant had voluntarily absented himself and the trial could continue. However, the appellant's trial defense counsel requested a continuance for thirty days to see if the appellant would be apprehended or return on his own for trial. The military judge granted the request and set a new trial date of 22 January 1992.

On 22 January 1992, a new trial judge had been detailed to preside at the appellant's trial. The appellant still did not appear for his trial. The appellant's first sergeant testified that the appellant had not returned to the unit and the unit had not received any reports that the appellant was hospitalized, in jail, or otherwise unable to return to his unit. The unit had contacted the appellant's family who indicated that they did not know his whereabouts. Based on this information, the military judge determined "that Specialist Stewart is still absent and that his absence *is through no fault of the government*" (emphasis added).

### I. Trial in Absentia

The appellant has a right to be present for his trial, but his voluntary absence after he has been arraigned is a waiver of that right. Manual for Courts–Martial, United States, 1984, Rules for Courts–Martial 804(a) and 804(b)1 [hereinafter MCM, 1984 and R.C.M.]. The government has the burden of proving the absence is voluntary by a preponderance of the evidence. *See* R.C.M. 804(b) discussion. The absence of advice to the accused that he can be tried in his absence does not preclude a finding that his absence was voluntary. *United States v. Jones,* 34 M.J. 899, 911 (N.M.C.M.R.1992). Absence alone warrants a finding of voluntariness if there are no circumstances indicating the contrary. *United States v. Peebles,* 3 M.J. 177, 179 (C.M.A.1977); *United States v. Cook,* 20 U.S.C.M.A. 504, 43 C.M.R. 344 (1971).

The government established that the appellant knew of his trial date of 17 December 1991, that he was to be escorted to his trial, and that a check of his unit area did not reveal his presence. We find

that the appellant voluntarily absented himself from his trial on 17 December 1991, and that the military judge could have proceeded with the trial on that date. The government's satisfied its burden of showing the absence was voluntary by the presentation of evidence of the appellant's continued absence for thirty-five additional days in which the appellant had not contacted his unit, evidence of the unit's contact with the appellant's family and their lack of knowledge of his whereabouts, and evidence of the lack of any inquiry about the appellant from any police agency or other sources. We find that the appellant's absence from his trial on 22 January 1992 was voluntary and hold that it was not error to proceed with the trial in the appellant's absence.[1] We further find that the military judge applied the correct standard and did not shift the burden to the appellant when he stated that the absence was through no fault of the government. The military judge was merely adopting the findings of the military judge made on 17 December 1991 of voluntary absence and his statement that there was no fault of the government was gratuitous.

## II. Escape from Custody

The appellant was charged with escaping from the custody of Agent Middleton. The test for legal sufficiency of the evidence is whether, considering the evidence in the light most favorable to the government, the trier of fact could rationally find the existence of every element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Blocker*, 32 M.J. 281, 284 (C.M.A.1991). The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, this Court is itself convinced of appellant's guilt beyond a reasonable doubt. UCMJ art. 66(c), 10 U.S.C. § 866(c). *United States v. Turner*, 25 M.J. 324 (C.M.A.1987).

The offense of escape from custody requires a finding that the accused freed himself from custody before being released by proper authority. MCM, 1984, Part IV, para. 19b(3)(c). Custody is the lack of an ability to freely move imposed by physical restraint or other control exercised in the presence of the accused by official acts or orders. Custody is a temporary restraint used until other forms of restraint can be used or the accused is released. MCM, 1984, para. 19c(3)(a). Also, the person apprehending the appellant must have the authority to apprehend. MCM, 1984, para. 19b(3)(b). The court members were advised by the military judge that an accused who escapes from custody must have reason to believe that the person apprehending him has the authority to hold the accused in his custody. Dep't of Army, Pam. 27-9, Military Judges' Benchbook, para. 3-38 (C1, 15 Feb. 1985).

The facts are not in dispute. The appellant was apprehended by Agent Hastings of the Fort Hood CID office and Investigator Click of the Killeen police and placed in their custody. To get the supplier, Caldwell, Agent Hastings and Investigator Click put Agent Middleton and the appellant together in a car to meet with Caldwell. The appellant did not know Middleton was a CID agent. In fact, he was specifically told otherwise by Middleton. Agent Middleton, as a CID agent, did have the authority to apprehend the appellant and hold him in his custody. We find that when Agent Hastings and Investigator Click put the appellant in the car with Middleton, he was no longer in their custody. We further find that the appellant was never in the custody of Agent Middleton because he did not know that Middleton was a CID agent with the concomitant authority to apprehend him. Accordingly, we hold that under the circumstances of this case, the evidence is legally and factually insufficient to support the findings of guilty of escaping from the custody of Middleton.

---

**1.** In his petition for clemency pursuant to R.C.M. 1105, the appellant admitted that he left

his unit on 17 December 1991 to avoid trial.

Since we have disposed of this offense by finding legal and factual insufficiency, there is no reason to discuss the other assignments of error concerning the military judge's instructions.

### III. Sentence Appropriateness

The appellant contends that his sentence is too severe. It should be noted that, before the appellant absented himself from trial, he and his trial defense counsel had negotiated a pretrial agreement with the convening authority to approve the sentence as adjudged except disapprove any confinement in excess of ten years. The appellant, prior to his absence, indicated a desire to be tried by military judge alone. However, because of his absence, he was required to be tried by a court consisting of officer members. The court that heard the appellant's case was composed of a lieutenant colonel (engineer), three majors (finance, transportation, infantry), two captains (quartermaster and chemical), and a chief warrant officer 4.

The appellant was convicted of five specifications of selling "crack" cocaine, of conspiracy to sell "crack" cocaine, and possession of the same drug. It was clear from the record of trial that the appellant was a "crack" cocaine salesman who willingly sold drugs to other soldiers.

It is the duty of this Court to affirm only a sentence we find correct in law and fact and determine, on the basis of the entire record, should be approved. UCMJ art. 66(c). The court that sentenced the appellant was a fair cross-section of Army officers. Its members consisted of officers from combat arms, combat support, and combat service support branches. It was not stacked with senior officers but had representation from middle grade and junior officers. The court members adjudged a period of confinement well below the permissible maximum of ninety-six years, ninety-five of which were attributable to the appellant's drug offenses. The convening authority, an acting corps commander, had the opportunity to review the case, consider a petition for clemency by the appellant, and a recommendation from his staff judge advocate. He determined that he would not grant clemency. It has long been recognized that drugs pose a serious problem for the military. *United States v. Trottier*, 9 M.J. 337 (C.M.A.1980) (citing *Schlesinger v. Councilman*, 420 U.S. 738, 760 n. 34, 95 S.Ct. 1300, 1314 n. 34, 43 L.Ed.2d 591 (1975)). The appellant's distribution of cocaine in 1991 poses at least as great a threat to the Army as Trottier's sales of lysergic acid diethylamide (LSD) and marijuana did to the Air Force in 1977. We see no reason to change the sentence as it pertains to the appellant's drug dealing. A sentence of twenty-five years' confinement for a soldier who willingly deals "crack" cocaine to other soldiers on five separate occasions is correct in law and fact and, on the basis of the entire record of trial, should be approved. Since we have determined that the findings of guilty for the offense of escape from custody cannot be affirmed, we will grant the appellant sentence relief for that offense only.

We have considered the other assertions raised personally by the appellant, pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982), and find them without merit.

The findings of guilty of Charge II and its Specification are set aside and Charge II and its Specification are dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the errors noted and the entire record, the Court affirms only so much of the sentence as provides for a dishonorable discharge, confinement for twenty-five years, forfeiture of all pay and allowances, and reduction to Private E1.

Judge DOGGETT and Judge DELL'ORTO concur.