**UNITED STATES**

v.

**Staff Sergeant Marquis C. THROWER, FR578–96–0565, United States Air Force.**

**ACM 29228.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 23 Feb. 1992.

Decided 7 Dec. 1992.

Appellate Counsel for the Appellant: Colonel Jeffrey R. Owens and Captain Richard W. Aldrich.

Appellate Counsel for the United States: Lieutenant Colonel Brenda J. Hollis and Major Jeffrey C. Lindquist.

Before O'HAIR, SNYDER, and GRUNICK, Appellate Military Judges.

## OPINION OF THE COURT

GRUNICK, Judge:

Appellant was convicted of stealing an automatic teller machine (ATM) card, $800 cash, and a hubcap; fraudulently writing a bad check; dishonorably failing to pay two debts; and dishonorably failing to maintain sufficient funds on two other bad checks, in violation of Articles 121, 123a, and 134, UCMJ, 10 U.S.C.A. §§ 921, 923a, 934, respectively. The approved sentence extends to a bad-conduct discharge, confinement for 18 months, forfeitures of $350 pay per month for 18 months, and reduction to the

lowest enlisted grade. While we find no prejudicial error and affirm, a discussion of some of the eight assigned errors is appropriate.

## I. VOLUNTARINESS OF CONFESSION

■ Appellant stole an ATM card from the wallet of a subordinate in his duty section and used the card to obtain $800 from his subordinate's account at the base bank for the down payment on a car. When initially questioned by Security Police investigators, appellant denied any involvement in the theft. Several months later, appellant was interviewed by the Air Force Office of Special Investigations (AFOSI). After being read his rights, appellant waived his rights to counsel and to remain silent. When appellant continued to deny the theft, the detachment commander, Special Agent Jackson, was called into the room to interview appellant.

Agent Jackson was introduced to the appellant as "Dr. Paul," a psychologist/psychic from Washington, D.C. Agent Jackson, as "Dr. Paul", told appellant he had special power to know when he was being told a lie by looking into his crystal ball. When asked by trial counsel whether this crystal ball babble was serious, Agent Jackson said, "No, and I don't think he thought I was serious either." Agent Jackson said the purpose of this ruse was to develop a relationship where appellant could get some things off his mind. Appellant opened up to Agent Jackson, describing a lack of support from his unit on his financial problems.

During the interview with Agent Jackson, appellant admitted to stealing the ATM card. Agent Jackson turned appellant over to other agents, who took written confessions from appellant on that day and again 8 days later. There were no promises of immunity from prosecution by the government if he confessed and appellant was neither threatened nor coerced into giving a statement.

■ Appellate defense contend the statements were involuntary and should have been suppressed by the military judge. In our view, the trial judge's assessment of the confessions and their surrounding circumstances were clearly supportable in law and fact. The use of deception in obtaining a confession is not impermissible as long as the artifice was not designed or calculated likely to produce an untrue confession. *United States v. McKay,* 9 U.S.C.M.A. 527, 26 C.M.R. 307 (1958); *United States v. Davis,* 6 M.J. 874 (A.C.M.R.1979); *pet. denied,* 8 M.J. 234 (C.M.A.1980). Appellant admitted the essential truth of the two statements during questioning at trial.

It is hard for us to view the cornball ruse of "Dr. Paul" the psychic as anything other than an adjuration to appellant to speak the truth. In response to appellant's expressed financial concerns, agents put him in telephone contact with his commander and agreed to inform authorities of his cooperation. We agree with the military judge's determination that appellant's statements were voluntary. *See Illinois v. Perkins,* 496 U.S. 292, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990); *United States v. Jones,* 34 M.J. 899 (N.M.C.M.R.1992); *United States v. Melanson,* 15 M.J. 765 (A.F.C.M.R.1983).

## II. CONTINUING TRIAL AFTER ACCUSED'S ABSENCE

■ While appellant was giving his unsworn statement during sentencing, he became increasingly less responsive to the questions posed to him by his counsel. Following a brief recess, trial defense counsel informed the court members appellant was experiencing difficulty responding to questions because of medication. The remainder of appellant's unsworn statement was given through his counsel. Upon completion of defense counsel's reading of the unsworn statement and just before the defense rested, the military judge, during an Article 39(a) session, directed a recess because appellant appeared to be drowsy during his counsel's reading of the unsworn statement.

Appellant was taken to the hospital, examined by doctors, and admitted for an overdose of prescription sleeping pills. When the Article 39(a) session reconvened 2 hours after the recess, trial and defense

counsel informed the military judge appellant was unconscious in the base hospital. His doctors advised he was likely to remain that way for 24 hours, and may require continued hospitalization.

The military judge determined appellant was unavailable for trial, and his overdose on prescription drugs was a voluntary absence under R.C.M. 804(b)(1). At the judge's direction, the trial continued in appellant's absence. When the court members returned, they were instructed appellant was hospitalized and his absence was not to be construed as an aggravating factor. Trial defense counsel did not object to continuing in appellant's absence, and the defense rested when the court members returned.

R.C.M. 804(b)(1) authorizes the continuation of a trial when an accused forfeits his right to be present by being voluntarily absent after arraignment. The discussion to R.C.M. 804 states the government must establish by a preponderance of the evidence the accused's absence from trial was voluntary. In this case, there was ample evidence for the military judge to conclude the appellant had voluntarily incapacitated himself from appearing at his trial by ingesting from 30 to 45 tablets of a prescription sedative, Doxapin.

As the discussion to R.C.M. 804 states, when an accused is voluntarily absent from trial, a delay or continuance may be appropriate, "depending on all the circumstances." We find it significant trial defense counsel did not object to the trial proceeding in the appellant's absence and no continuance was requested. In situations such as this, trial judges must rely on what has transpired before them, their own judicial experience, and a certain measure of common sense and judgment. *United States v. Abilar*, 14 M.J. 733 (A.F.C.M.R. 1982).

In addition to finding appellant's absence voluntary, the military judge determined a continuance or additional delay would not be in the best interest of the appellant or the United States. The discussion to R.C.M. 804 states: "Where there is some evidence that an accused who is absent for a hearing or trial may lack mental capacity to stand trial, capacity to voluntarily waive the right to be present for trial must be shown." There was no evidence before the military judge appellant lacked the mental capacity to stand trial. Although appellant had a mental examination before trial, no responsibility or capacity issues were raised by trial defense counsel. We agree with the military judge's decision to treat this incident as a voluntary absence by appellant and not as evidence he lacked mental capacity to stand trial or voluntarily waive his right to be present. Appellant's voluntary incapacitation near the end of the trial did not prejudice his defense. Appellant's absence after the presentation of all defense matters had minimal impact.

We find (as did the military judge) by a preponderance of the evidence that appellant's absence from trial following his ingestion of an overdose of sleeping pills was voluntary. The military judge did not abuse his discretion by continuing the trial in appellant's absence. *United States v. Yarn*, 32 M.J. 736 (A.C.M.R.1991); *United States v. Matthews*, 19 M.J. 707 (A.F.C.M.R.1984), *pet. denied*, 20 M.J. 146 (C.M.A.1985); R.C.M. 804.

## III. RECORD OF TRIAL ISSUES

■ Appellate counsel complain the record of trial is incomplete due to the failure to include the results of a mental examination conducted on appellant prior to trial. The conclusions of this examination were distributed to the officials and parties listed in R.C.M. 706(c)(3)(A). During appellant's guilty plea inquiry, trial defense counsel stated there was no issue concerning the defense of mental responsibility. The conclusions of the board were never offered by the defense during findings, sentencing, or in any post-trial submissions. R.C.M. 1103 provides an extensive list of the matters that *shall* be attached to the record of trial. Results of mental examinations are not on the list and are not required to be in a record of trial unless offered as an exhibit during or after trial. *See* R.C.M. 1103.

Appellate counsel complain the record of trial was never served upon appellant because the DD Form 490 in the record of trial, where appellant would sign for his copy, is blank. During our review of the record of trial on this issue, we found two indications appellant received his copy of the record. In acknowledging receipt of the recommendation of the staff judge advocate, on 26 March 1991, appellant indicated he received a copy of the record of trial. We also found appellant's signature on a DD Form 490 in the record of trial, indicating he received his copy of the record on 26 March 1991. From this, we find sufficient evidence of the record's service upon appellant. We can only surmise the copy of the record reviewed by appellate defense counsel did, in fact, contain a blank DD Form 490.

## IV. CONCLUSION

We have considered the remaining assignments of error and have concluded ap-pellant's pleas were provident, the evidence was legally and factually sufficient to establish appellant's guilt, and any instructional issues were waived. *See United States v. Byrd*, 24 M.J. 286, 293 (C.M.A. 1987); *United States v. Allison*, 30 M.J. 546, 547 (A.C.M.R.1990); *United States v. Bindley*, 23 M.J. 658 (A.F.C.M.R.1986), *aff'd*, 25 M.J. 222 (C.M.A.1987); *United States v. Turner*, 25 M.J. 324 (C.M.A.1987); and R.C.M. 1005(f). The findings of guilty and the sentence are correct in law and, on the basis of the entire record, are

AFFIRMED.

Senior Judge O'HAIR and Judge SNYDER concur.